Filed 2/27/26  P. v. Sierra CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HILARIO SIERRA,<br><br>    Defendant and Appellant. | B338335<br><br>(Los Angeles County<br>Super. Ct. No. BA204828) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis B. Rappe, Judge.  Affirmed.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Shezad H. Thakor, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Hilario Sierra appeals a judgment following conviction of first degree kidnapping and murder.  He argues the court improperly admitted evidence of prior, uncharged misconduct.  We disagree and affirm.

## BACKGROUND

### A.    Uncharged 1997 Robbery

In November 1997, Sierra, Jose Morales, and Luis Rodriguez, went to the rear house at 1126 Stockton Street in Compton intending to rob the residents, Veronica Lopez and Antonio Angola Escobar.  They forced the residents at gunpoint to lie down on the floor and demanded money.  The evidence varied as to how much they stole:  One of the victims told police the robbers took $300 and a cowboy hat; Morales testified they stole $3,000; and at trial the victims testified the robbers took $600 and some jewelry.

### B.    1998 Murders

On February 2, 1998, Sierra, Morales, and Rodriguez went back to 1226 Stockton Street with Sandro Perez, who told them they could "make some quick money."  They saw two residents of the front house, Guadalupe Gurrola and his 15-year-old son Andres, drive away in a van.  They followed, and when the van stopped, Sierra, Rodriguez and Perez pointed guns at Guadalupe and Andres and got into the van with them.  They demanded money and drove to a bank, where they withdrew $300 with Guadalupe's ATM card.  They then drove to an underpass, where Sierra shot Guadalupe in the head and Rodriguiez shot Andres.  Both victims were killed.

### C.    Trial

The Los Angeles County District Attorney charged Sierra with two counts of kidnapping during carjacking and two counts of murder, and alleged the murders were committed during the

commission of a robbery.  (Pen. Code, §§ 187, subd. (a), 209.5, subd. (a), 190.2, subd. (a)(1) & 17(A).)

At trial, the prosecutor moved in limine to introduce evidence of the 1997 home invasion robbery, arguing the robbery was relevant to show Sierra's motive.  Defense counsel objected that the offense was too dissimilar to the charged offenses to warrant admission of the evidence.

The trial court admitted testimony from Morales, Lopez, and Escobar about the uncharged robbery for the purpose of demonstrating motive.

In argument to the jury, the prosecutor argued that evidence of the successful 1997 robbery demonstrated that Sierra had a motive to commit the 1998 robbery.

### D.    Verdict, Sentence, and Appeal

The jury convicted Sierra of kidnapping and first degree felony murder and found several special circumstances and enhancement conditions to be true, including that he committed the murders in the course of a robbery.  The court sentenced him to two consecutive and two concurrent sentences of life without the possibility of parole, plus enhancements.

Sierra appealed.

### DISCUSSION

Sierra contends the trial court erred in admitting evidence of the 1997 robbery to demonstrate his motive to commit the 1998 robbery.  We disagree.

### A.    Pertinent Law

Generally, the prosecution may not use a defendant's prior criminal act as evidence of a disposition to commit a charged

3

criminal act. (Evid. Code, § 1101, subd. (a).)[1] But such evidence is admissible when relevant to prove some fact other than the defendant's disposition to commit the charged crime, such as motive. (§ 1101, subd. (b); *People v. Davis* (2009) 46 Cal.4th 539, 602.)

Admissibility of other crimes evidence depends on " '(1) the materiality of the fact to be proved or disproved, (2) the probative value of the other crime evidence to prove or disprove the fact, and (3) the existence of any rule or policy requiring exclusion even if the evidence is relevant.' " (*People v. Fuiava* (2012) 53 Cal.4th 622, 667.)

We review the admission of evidence of an uncharged offense for abuse of discretion. (*People v. Poplar* (1999) 70 Cal.App.4th 1129, 1138.)

### B.    Application

Sierra argues that evidence of the robbery of residents in the house behind the Gurrolas' house lacked substantial probative value because it proved nothing more than that he was involved in another robbery.

Probative value goes to the weight of the evidence of other offenses. Evidence is probative if it is material, relevant, and necessary. (*People v. Johnson* (1987) 43 Cal.3d 296, 318, fn. 20.)

Here, the evidence showed that Sierra successfully obtained $3,000 by committing a robbery at 1126 Stockton Street in November 1997. The evidence was relevant because it tended in reason to prove that Sierra knew he could successfully commit a second robbery at that address, which provided a motive to return. The evidence was material because Sierra's intent to rob the

---

[1] Undesignated statutory references are to the Evidence Code.

4

Gurrolas may be inferred from his motive to do so. (See *People v. Clark* (2021) 62 Cal.App.5th 939, 960 ["motive is an intermediate fact, from which the existence of an ultimate fact may be inferred"].) The evidence was necessary because it supported the credibility of other evidence that Sierra committed the murder during the commission of a robbery.

Sierra argues that the 1997 and 1998 robberies were too dissimilar to permit evidence of the former to prove the latter.

To be admissible under section 1101, subdivision (b), a prior uncharged act must be sufficiently similar to the charged offense to support the inference that the defendant committed the charged offense. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393.) But "the probativeness of other-crimes evidence on the issue of motive does not necessarily depend on similarities between the charged and uncharged crimes, so long as the offenses have a direct logical nexus." (*People v. Demetrulias* (2006) 39 Cal.4th 1, 15.) It is enough that the motive for the charged crime arise simply from commission of the prior offense. (*People v. Fayed* (2020) 9 Cal.5th 147, 191.)

Here, the 1997 robbery was a key piece of evidence that helped explain the development of Sierra's motive to rob the Gurrolas: He successfully obtained money in the first robbery, which led him believe he could do so again. The offenses therefore have a direct logical nexus, rendering the evidence of the 1997 robbery admissible.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:



BENDIX, J.




KIM, M., J.